UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-883-MDB

DEBRA SCHMIDT, *et al.*,

   Plaintiffs,

v.

FALCON SCHOOL DISTRICT 49, *et al.*,

   Defendants.

---

**PLAINTIFFS' MOTION FOR AWARED OF ATTORNEY FEES AND RELATED NONTAXABLE EXPENSES, AND FOR COSTS**

---

Pursuant to 42 U.S.C. § 1988, Plaintiffs Debra Schmidt and Kelly Kohls respectfully move for an award of attorneys' fees and related nontaxable expenses, and costs incurred in the successful prosecution of this civil rights action wherein judgment was ultimately entered in their favor. *See Amended Final Judgment* (Doc. No. 65). In addition to the following memorandum, this *Motion* is supported by: (i) the *Declaration of Curt C. Hartman* (Doc. Nos. 71 to 71-2); (ii) the *Declaration of Christopher P. Finney* (Doc. Nos. 72 to 72-3); and (iii) the *Declaration of Steven D. Zansberg* (Doc. No. 73). Pursuant to this *Motion,* Plaintiffs seek a total attorney-fee award of $228,270.00, together with expenses/costs in the total amount of $9,336.97, *i.e.*, a total award of $237,606.97.[1]

---

[1] The motion is being tendered consistent with the Court's granting of the oral motion

## MEMORANDUM IN SUPPORT

As a prevailing party in an action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses incurred pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Section 1988(b) provides in pertinent part that:

> [i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title. . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

"Despite the statute's grant of discretion, the Supreme Court has advised that 'fees should be awarded [to successful § 1983 litigants] … unless special circumstances would render such an award unjust.'" *Zinna v. Congrove*, 680 F.3d 1236, 1239 (10th Cir. 2012)(quoting *Kentucky v. Graham*, 473 U.S. 159, 164 (1985)); *accord J & J Anderson, Inc. v. Erie*, 767 F.2d 1469, 1474 (10th Cir. 1985)("[a]ttorneys fees are, for the most part, absent special circumstances, awarded as a matter of course to prevailing parties under § 1988"). As developed below, through the return of a jury verdict in their favor on their civil rights claims and the entering of final judgment consistent therewith, Plaintiffs obtained sufficient relief from this Court so as to be a prevailing party and, as such, are entitled to an award of reasonable attorney fees, together with costs and expenses.

---

following trial allowing until September 26, 2025, for the filing of this motion. *See Amended Judgment* (Doc. No. 65). Additionally, pursuant to Local Rule 7.1(a), undersigned counsel conferred with opposing counsel on September 17, 2025, about the potential of resolution short of the filing of a motion. At that time, the general consensus was that such resolution was not viable short of a motion, though follow-up exchanges indicated some willingness for discussions. However, in light of the already-established deadline for filing, Plaintiffs are tendering the motion at this time.

## I.   FACTUAL BACKGROUND

During the course of a meeting of the Board of Education of the Falcon School District 49 held on February 22, 2023, Plaintiffs were holding small signs (printed on 8½" x 11" sheets of paper) in front of their bodies, calling for the resignation of three members of the Board.  In so holding these small signs, Plaintiffs were not disrupting the meeting nor were they obstructing the ability of the few other people in attendance to observe or hear the proceedings.   Additionally, Plaintiffs' speech-related conduct was part of a wide scope of speech-related activities concededly allowed throughout the course of meetings of the Board of Education.  Such permitted speech-related activities included standing up and sitting down as a presenter was speaking to express approval, fluttering one's hands above one's head in an act of approval and given the appellation of "jazz hands", as well as displaying certain signs.[2]

Even though he had observed (and directly responded to Plaintiffs' signs early in the meeting on February 22, 2023),[3] John Graham, as president of the school board, ultimately took offense to the signs nearly three hours into the meeting during yet another argument between him and Ivy Liu (another school board member).  At this stage, *i.e.*, nearly three hours into the meeting, Mr. Graham demanded Plaintiffs not display the signs calling for his resignation and the resignation of two other members of the Board.  When Plaintiffs refused to submit, Plaintiffs were

---

[2]   Throughout the course of the trial, there was a lack of consistency on the part of the School District, Mr. Graham and Mr. Hiltz as to exactly what the policy did or did not allow.  On the one hand, there was the assertion all signs were allowed so long as such signs contained no writing; on the other hand, there was the contention that only thumbs up and thumbs down signs were allowed with all other signs prohibited or subject to the *ad hoc* determination of Mr. Graham.

[3]   During the meeting, Mr. Graham looked out to the audience and declared to Plaintiffs: "You want me to resign.  So, I haven't even talked yet but you're asking me to resign. Very good. Very good.  Just so you know, I won't resign, and I think you're wrong." *See Trial Exhibit 1, at 1:25:34*.

forced to leave the meeting at the explicit direction of Mr. Graham. Consistent with the verdict rendered by the jury, such adverse action by Mr. Graham was motivated or premised upon his personal disagreement with the viewpoint of Plaintiffs calling for his resignation. Additionally, the *ad hoc* policy under which Mr. Graham undertook such action was not reasonable in light of the purpose of the forum and, thus, failed to comply with the requirements of the First Amendment.

As a result of the foregoing and following two-and-a-half days of trial, a jury returned a verdict, finding that that John Graham and the School District violated the First Amendment rights of Plaintiffs Debra Schmidt and Kelly Kohls. And, as part of its verdict, the jury awarded each Plaintiff nominal damages of $1,000 against the School District and $1,250 against John Graham. Now, as prevailing parties herein and pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920, Plaintiffs seek the recovery of attorney fees, nontaxable expenses and costs.

## II. PLAINTIFF IS A PREVAILING PARTY ENTITLED TO AN AWARD OF ATTORNEY FEES , EXPENSES AND COSTS

### A. Plaintiffs are "Prevailing Parties" and Entitled to an Award of Reasonable Attorney Fees.

A plaintiff who succeeds in remedying a civil rights violation serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011)(quoting *Newman v. Piggie Park Enterprises, Inc*., 390 U.S. 400, 402 (1968)). Thus, pursuant to 42 U.S.C. § 1988, an award of attorney fees, expenses and costs is to be made to a "prevailing party" in a successful civil rights action. Congress enacted § 1988 "in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A*., 559 U.S. 542, 550 (2010). Thus, "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights." *Id.* at 559.

"[F]or the purposes of §1988(b), a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" *Lackey v. Stinnie*, 602 U.S. 192, 202 (2025)(quoting *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U. S. 782, 792-793 (1989)).  "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay" and, thus, "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 112-13 (1992); *accord Koopman v. Water District No. 1*, 41 F.3d 1417, 1420 (10th Cir. 1994)(plaintiff "is a prevailing party because he was awarded nominal damages").  In this case, judicial relief in the form of the *Amended Final Judgment* (Doc. No. 65) was entered in favor of Plaintiffs awarding them damages totaling $4,500 against John Graham and the School District.  Thus, it should be beyond cavil that Plaintiffs are "prevailing parties" entitled to an award of attorney fees, expenses and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

    **B.**    **Plaintiffs' Attorney Fees and Costs Are Sufficiently Documented and Supported**

As for the amount of an appropriate fee award, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The cases refer to this product as the "lodestar amount". *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)(defining "lodestar amount" as "the product of the number of attorney hours reasonably expended and a reasonable hourly rate" (internal quotation marks and citation omitted)).  There is a "strong presumption" that the lodestar figure represents a reasonable fee.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986); *accord Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)("the resulting product is presumed to be a reasonable fee as contemplated by Section 1988").

### a. Number of Hours Expended

The "first step in calculating the lodestar [is] determining the number of hours reasonably spent by counsel for the party seeking fees." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). "To evaluate the number of hours reasonably expended on the litigation, the district court considers 'whether the attorney's hours were 'necessary' under the circumstances.'" *Valdez v. Macdonald*, 66 F.4th 796, (10th Cir. 2023)(quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

In assessing the reasonable number of hours involved in this case, this Court should also be guided by the fact that this case did not involve separate and discrete claims, but rather a singular claim challenging the removal of Plaintiffs from the meeting because of the message on their signs. As the Supreme Court has recognized, in some civil rights cases, "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. In such a suit, an attorney's "work on one claim will be unrelated to his work on another claim" and "must be treated as if they had been raised in two separate lawsuits." *Id.* at 435. On the other hand, "[i]n other cases[,] the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead[,] the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In support of the present motion, the following declarations have been submitted:

- *The Declaration of Curt C. Hartman* (the "Hartman Declaration")(Doc. Nos. ___ to ___): Mr. Hartman provides an overview of the practice of The Law Firm of Curt C. Hartman, together with his professional background and experience. Mr. Hartman also provides a description of the scope of the various aspects the nearly 2½ years involved in bringing this case to trial supported by contemporaneous daily time reports for the work he performed in support thereof, as well as the recoverable expenses incurred by the Hartman Law Firm.

- *The Declaration of Christopher P. Finney* (Doc. Nos. __ to ___): Mr. Finney describes the practice of the Finney Law Firm LLP, together with his professional background and experience. Mr. Finney includes the contemporaneous daily time reports for the litigation from when he was brought on as co-counsel in preparation for the claims going to trial.

- *The Declaration of Steven D. Zansberg* (Doc. No. __): Mr. Zansberg sets forth his background and vast experience as a civil rights attorney in Colorado for nearly 30 years. Mr. Zansberg independently reviewed the *Hartman Declaration* and the *Finney Declaration,* including the itemized billing statements, as well as other materials and has, based upon his knowledge, skill, experience, training, or education in the legal profession opined that the number of hours claimed by Plaintiffs' counsel in this action are reasonable and charges hourly rates are reasonable consistent with the fee award standards in this jurisdiction.

As indicated through the *Hartman Declaration* and the *Finney Declaration*, a total of 314.0 hours were expended or will be expended throughout the course of this lawsuit which ultimately vindicated the First Amendment and the violation of such rights by John Graham and Falcon School District 49.[4] As the fee statements attached to such *Declarations* demonstrate, this case proceeded through a normal process of litigation – from initial consultation and investigation, to the drafting and filing of pleadings, to significant discovery (including depositions of seven witnesses), to dispositive motion practice, to preparation of pre-trial joint filings, to pre-trial motions, to significant trial preparation (including drafting of jury instructions), to trial itself, to

---

[4] As noted in the fee statements attached to the *Hartman Declaration*, an estimated 12 hours has been included in anticipation of a reply memorandum being drafted and filed in support of the present *Motion*.

post-trial motion practice, and, now, the motion for attorney fees, expenses and costs. In an overall review of the daily time reports of The Law Firm of Curt C. Hartman and the Finney Law Firm, the legal work and associated fees in this case can be subdivided into various categories which further demonstrate and support the reasonableness of the overall fees claimed herein:

1. **Initial Intake/Assessment/Pleadings**. "Services relating to 'investigation and research' could certainly be reasonable prior to the initiation of litigation and, one might argue, would be expected of responsible lawyers who attempt to make sure the litigation position is on firm ground prior to the litigation." *Kelly v. Corrigan*, 890 F.Supp.2d 778, 785 (E.D. Mich 2012); *see Webb v. County Bd. of Ed.*, 471 U.S. 234, 243 (1985)("some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation'"). Additionally, the initial aspects of the case involved the drafting of the *Complaint* (Doc. No. 1), together with efforts to obtain *Waivers of Summons* (Doc. Nos. 4 to 7)), and review/assessment of the *Answer* (Doc. No. 15) thereto.

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 26.2 | $ 19,126.00 |
|  | **Total Fees** | $ 19,126.00 |

2. **Discovery Efforts.** Generally speaking, discovery in this case involved written discovery, followed by the taking or defending of seven depositions of the parties and non-parties. Furthermore, as demonstrated at trial, extensive use of deposition testimony was utilized both in terms of offering testimony of non-appearing party Robert Konz, as well as for impeachment of several witnesses.

|                                | Total Hours | Total Fees   |
|--------------------------------|-------------|--------------|
| **The Law Firm of Curt C. Hartman** | 49.5        | $ 36,135.00  |
|                                | **Total Fees** | $ 36,135.00 |

3. **Settlement Discussions.** In this case, there were limited settlement discussions between counsel as the respective view of each side made it readily apparent that further exploration along those lines would be not be productive.

|                                | Total Hours | Total Fees   |
|--------------------------------|-------------|--------------|
| **The Law Firm of Curt C. Hartman** | 2.1         | $ 1,533.00   |
|                                | **Total Fees** | $ 1,533.00 |

4. **Dispositive Motion.** Consistent with how a significant number of public fora cases are resolved, and in light of most, if not all, material facts as to what occurred were not in genuine dispute, Plaintiffs appropriately filed a *Motion for Summary Judgment* (Doc. No. 28). In ruling thereon, the Court was able to address and make certain determinations which carried over to trial or narrowed issues for trial, including, in particular, the proper categorization of the forum at issue. As a result, judicial economy was served as to the scope and requirements for trial, as well as its length. As such efforts are a normal course of litigation pursued in good faith, recovery of fees associated therewith are warranted. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995)("[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee" (quoting *Hensley*, 461 U.S. at 435)); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412-13 (10th Cir. 1993)(same).

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 59.7 | $ 43,581.00 |
|  | **Total Fees** | $ 43,581.00 |

**5.    Trial Preparation / Pre-Trial Filings / Proposed Jury Instructions.**  Significant efforts were undertaken in advance of and in preparation for trial.  In addition to the preparation of individual witness outlines which included detail review of deposition transcripts for cross-reference or potential impeachment, there were significant exchanges amongst counsel concerning the drafting of the various pretrial filings required by the *Court's Standing Order Regarding Pretrial & Trial Procedures*, as well efforts involving drafting of proposed jury instructions.

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 85.3 | $62,269.00 |
| **Finney Law Firm** | 20.7 | $14,208.50 |
|  | **Total Fees** | $76,477.50 |

**6.    Trial.**  In addition to the trial itself lasting two-and-a-half days, during the evenings during trial additional work and research was continued with respect to legal issues arising during the day, preparation for the ensuing days presentations, as well as efforts towards the finalization of jury instructions.

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 32.2 | $23,506.00 |
|  | **Total Fees** | $23,506.00 |

7. **Post-Trial Motions.** Following trial and the adverse jury verdict, Defendants filed the *Motion to Amend Judgment* (Doc. No. 67), seeking a reduction in the amount of nominal damages awarded by the jury. Briefing thereon was necessary, though it was aided by research already conducted as part of trial preparation and during trial as it concerned proposed jury instructions.

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 6.0 | $ 4,380.00 |
| **Finney Law Firm** | 0.7 | $ 511.00 |
| | Total Fees | $ 4,891.00 |

8. **Miscellaneous Matters.** In any case, there are general miscellaneous matters not readily falling within other categories though substantively advancing the case. Generally speaking, these limited items may include conferences with the Court or opposing counsel unrelated to specific motions or general attorney or client conferences to address strategy.

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman** | 2.7 | $1,971.00 |
| | Total Fees | $1,971.00 |

9. **Attorney Fee Application.** "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986). Included herein is an estimate (12 hours) of time anticipated to be involved in responding to any forthcoming opposition by the Defendants.

- 11 -

|  | Total Hours | Total Fees |
|---|---|---|
| **The Law Firm of Curt C. Hartman (including additional fees for reply)** | 28.8 | $21,024.00 |
| **Finney Law Firm (including additional time for reply)** | 0.1 | $    25.50 |
|  | **Total Fees** | **$21,049.50** |

Thus, based upon the following, as well as the *Declarations* submitted herewith, counsel expended or anticipates ultimately expending a total of 314.0 hours throughout the course of this lawsuit and, in light of the nature of litigation and as supported herein, such time was reasonable especially in light of the ultimate vindication at trial of Plaintiffs' First Amendment rights.

    **b. Hourly Rate**

As the second step in the lodestar determination, the Court must also determine a reasonable hourly rate. A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). As the Supreme Court explained in *Missouri v. Jenkins*, 491 U.S. 274 (1989):

> A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, i.e., "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum*, *supra*, *465 U. S. at 896* n.11, and one that grants the successful civil rights plaintiff a "fully compensatory fee," *Hensley v. Eckerhart,* 461 U. S. 424*,* 435 (*1983),* comparable to what "is traditional with attorneys compensated by a fee-paying client." S. Rep. No. 94-1011, at 6 (1976).

*Id.* at 286 (emphasis removed). "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled in part on other grds.*, *Pennsylvania v. Delaware Valley Council for Clean Air*,

483 U.S. 711 (1987).  In fact, attorneys experienced in civil rights and analogous litigation, such as Plaintiffs' counsel, may merit a higher hourly rate than those operating outside their field of expertise.  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  Additionally, in *Jenkins*, the Supreme Court held that a fee award should fully compensate a prevailing plaintiff's counsel through "an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise[.]"  *Id.* at 284; *accord Ramos*, 713 F.2d at 555 ("the hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed").

"Plaintiffs must provide evidence of the prevailing market rate for similar services," charged by lawyers with comparable skill and experience.  *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006).  But "[i]f the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, in its discretion, use other relevant factors, including its own knowledge, to establish the rate."  *Id.* at 1225.  In this case, evidentiary support for the hourly rate of $730 for Messrs. Hartman and Finney are supported by the evidentiary materials tendered herewith, in particular, the *Sansberg Declaration* wherein a civil rights attorney from Denver has opined on this fee application.  Additionally, such rates are in line with hourly rates awarded in prior years by judges in this District for attorneys with comparable experience (or less experience than) Messrs. Hartman and Finney in civil rights cases:

- *Valdez v. Motyka*, Case No. 15-CV-0109-WJM-STV, 2022 U.S. Dist. LEXIS 67620 (D. Colo. April 12, 2022), *aff'g award of att'y fees, rev'g on grds. sub. nom. Valdez v. Macdonald*, 66 F.4th 796 (10th Cir. 2023), in awarding attorney fees of $1,132,327.40 in a civil rights case against the City and County of Denver and an individual police officer, the court found that hourly rates ranging from $575 to $595 for skilled and experienced partner-level lawyers were reasonable.

- *Epps v. City & Cty. of Denver*, Case No. 1:20-cv-01878-RBJ, 2022 U.S. Dist. LEXIS 246055 (D. Colo. Dec. 30, 2022), in awarding attorney fees of $2,856,303.25 in a civil rights case against the City and County of Denver for First and Fourth Amendment violations committed by police officers who were not properly trained and were acting pursuant to policies, practices, and customs of the Denver Police Department, concluding lead counsel's hourly rate of "$595 fits well within the range of rates that several colleagues in this district and I have found to be reasonable in the Denver market for lawyers of her skill and experience."[5]

- *Valenzuela v. Coleman*, Case No. 18-cv-00329-CMA-STV, 2022 U.S. Dist. LEXIS 120009 (D. Colo. July 7, 2022), in awarding attorney fees of $485,201.50 in civil rights case arising from malicious prosecution claim, awarding fees based on hourly rate of $450 per hour for lead counsel who had over ten years of experience as a licensed attorney in Colorado, with extensive experience with civil rights cases.

Additionally, in *Epps*, Judge Jackson provided a thorough summary of hourly rates awarded within this District in fee-shifting cases in matters other than civil rights litigation which further support the reasonable rates awarded therein, and well as the requested rates in this case. *See Epps* 2022 U.S. Dist. LEXIS 246055, at *10-13. Considering that "the hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court," *Ramos*, 713 F.2d at 555, such decisions from over 3 to 7 years ago, together with the *Declarations* (and

---

[5] In this opinion, Judge Jackson elucidated on the experience of such lead counsel: "Lead counsel, Ms. Wang, has spent most of her 17-year career representing plaintiffs in § 1983 civil rights cases. She is a graduate of the University of Chicago Law School; has clerked for federal judges at the district and appellate levels; and has served as legal counsel in numerous significant civil rights cases. She has also had numerous appellate successes in civil rights cases. She has taught civil rights courses at the University of Chicago Law School. She is a zealous advocate, and I have observed her work overall to be excellent. Her time was billed at $595 an hour." 2022 U.S. Dist. LEXIS 246055, at *13-14.

In comparison, lead counsel in this case, *i.e.*, Mr. Hartman, spent most of his nearly 31-year career representing plaintiffs in § 1983 civil rights cases or other public interest litigation matters; a graduate of Vanderbilt Law School, he clerked for a federal judge on the appellate level, *i.e.*, the Fifth Circuit; he has significant success as lead counsel or co-counsel in numerous significant civil rights cases, including before the U.S. Supreme Court; and, as a former state court judge in a court of general jurisdiction, he also brings such relatively special experience to effectively serving as an advocate in litigation and trial. Considering the decade-plus of experience that Mr. Hartman possesses over the lead counsel in *Epps*, the requested hourly rate is more than reasonable.

the length and scope of counsel's experience) sufficiently support the reasonableness of the hourly rates of $730 for both Messrs. Hartman and Finney.

### c. Costs and Nontaxable Expenses

In awarding costs and expenses, the Tenth Circuit has "distinguish[ed] between those that are taxable under 28 U.S.C. § 1920 and those that are nontaxable. The latter may qualify for reimbursement as expenses under a separate statute, such as 42 U.S.C. § 1988." *Valdez*, 66 F.4th at 837. "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). And this includes the cost of "deposition transcripts or copies" if they "were offered into evidence, were not frivolous, and were within the bounds of vigorous advocacy." *In re Williams Sec. Litig -- WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009) (quotations omitted). On the other hand, "other out-of-pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable." *Valdez*, 66 F.4th at 837. (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995). In this case, this should be a distinction without a difference as those items recoverable as costs under § 1920 (which would be the filing fee, fees for court reporter and deposition transcripts, and PACER expenses) would also be reimbursable with other litigation expenses under § 1988. As developed in the fee statement included with the *Hartman Declaration*, the total amount of costs and nontaxable expenses incurred in this case total $9,336.97, and is fully recoverable pursuant to 28 U.S.C. § 1920 and/or 42 U.S.C. § 1988.

**III.   CONCLUSION**

As set forth and developed above, together with the *Declarations* and supporting documentations therein, Plaintiffs are "prevailing parties" pursuant to 42 U.S.C. § 1988 and, thus, entitled to an award of attorney fees in the amount of $228,270.00, together with expenses (both recoverable costs and nontaxable expenses) in the amount of $9,336.97.  Accordingly, judgment in said amounts should appropriately be entered, for a total award of $237,606.97.

Respectfully submitted,

 /s/ *Curt C. Hartman*
Curt C. Hartman
THE LAW FIRM OF CURT C. HARTMAN
7394 Ridgepoint Drive, Suite 8
Cincinnati, OH   45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney
FINNEY LAW FIRM LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, OH   45245
(513) 943-6650
*chris@finneylawfirm.com*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing will be served upon all counsel of record via the Court's ECF system on the date of filing.

 /s/ *Curt C. Hartman*