IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–00883–MDB

DEBRA SCHMIDT, and
KELLY KOHLS,

      Plaintiffs,

v.

FALCON SCHOOL DISTRICT 49,
JOHN GRAHAM, individually and in his official capacity as president of the Board of
Education of Falcon School District 49,
ROBERT KONZ, and
DAVID GLENN,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' "Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e)." (["Motion to Amend Judgment"], Doc. No. 67.) Plaintiffs responded, (Doc. No. 68), and Defendants replied, (Doc. No. 69).

Also before the Court is Plaintiffs' "Motion for Awarded [sic] of Attorney Fees and Related Nontaxable Expenses, and for Costs." (["Fee Motion"], Doc. No. 70.) Defendants responded, (Doc. No. 77), and Plaintiffs replied, (Doc. No. 80). After carefully considering the briefs, applicable law, and circumstances surrounding this case, the Court **ORDERS** that Defendants' Motion to Amend Judgment is **DENIED**, and Plaintiffs' Fee Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs' claims arise out of a public meeting of the Board of Education ("Board") for Falcon School District 59 ("District"), which occurred on February 22, 2023. (Doc. No. 1 at 16-17, ¶¶ 51-53.) At that meeting, Plaintiffs held up signs that were critical of several board members. (*Id.* at 12, ¶¶ 33-35.) In response, Defendant John Graham, the Board president, asked Plaintiffs to lower their signs. (*Id.* at 5, 13, ¶¶ 11, 38.) When Plaintiffs refused, Graham directed security to remove the Plaintiffs from the meeting room, after which Plaintiffs were escorted out by security. (*Id.* at 15, ¶¶ 44-46.) Plaintiffs subsequently filed an action in this Court, bringing claims under 42 U.S.C. § 1983 for alleged violations of their rights under the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at 16-18, ¶¶ 49-57.) Plaintiffs sought declaratory and injunctive relief, as well as damages, fees, and costs. (*Id.* at 18-19, ¶ 57.)

In July 2025, the Court held a three-day jury trial on the issue of Defendants' liability for unconstitutionally restricting Plaintiffs' speech at a 2022 school board meeting. (Doc. Nos. 57–59; *see also* Doc. No. 1 at 16-17, ¶¶ 51-53.) The jury ultimately found Defendants Falcon School District 59 ("District) and John Graham liable, and awarded Plaintiffs nominal damages in the amount of $2,000 against the District and $2,500 against Graham. (Doc. No. 65 at 1-2.) The Court entered judgment on July 23, 2025. (*Id.*)

**ANALYSIS**

## I.    Motion to Amend Judgment

Defendants seek remittitur of Plaintiffs' damages awards, arguing that both awards exceed what is permissible for nominal damages as a matter of law. (Doc. No. 67 at 3-6.) In response, Plaintiffs assert that Defendants waived their challenge to the damages verdict by failing to timely object to the relevant jury instruction. (Doc. No. 68 at 1-4.) Plaintiffs also argue the awards are lawful. (*Id.* at 4-7.)

The Court first addresses Plaintiffs' waiver argument. During deliberations, the jury submitted a written question to the Court, asking whether there was a "monetary limit for [nominal] damage payments." (Trial Audio, July 17, 2025, at 02:14:56-02:15:00 PM.) The Court instructed the jury that "[i]t is not unusual for a nominal damages award to be $1, but they have been as much as $1,000."[1] (*Id.* at 02:24:20-02:24:27 PM.) Defendants did not object to this instruction. (*See id.* at 02:21:51-02:24:57 PM.) Plaintiffs contend that Defendants' Motion to Amend Judgment is, in essence, an attack on the Court's instruction regarding the limit on nominal damages. (*See id.* at 1-4.) Thus, Plaintiffs assert that Defendants were required to tender their objections to the jury's instructions during trial pursuant to Federal Rule of Civil Procedure 51. (*Id.* at 2-3.) By failing to do so, Defendants waived any challenge to the resulting verdict. (*Id.* at 3-4.)

Defendants argue that Plaintiffs conflate Rule 51, which governs preservation of objections to jury instructions, and Rule 59(e), which offers "a distinct post-judgment mechanism to correct clear legal error in the judgment itself." (Doc. No. 69 at 6.) The Court agrees.

The Motion to Amend Judgment is not a challenge to the specific jury instruction. And while Defendants do appear to attribute the size of the award to the Court's instruction, to some extent, (*see* Doc. No. 67 at 2, 6; Doc. No 69 at 4), Defendants' arguments concern the legality of the judgment itself, (*see* Doc. No. 67 at 3-6 (citing cases dealing with excessive damages awards)). Indeed, Defendants confirm as much in their Reply. (*See* Doc. No. 69 at 2 (distinguishing between

---

[1] The full instruction was:

> There is no cap or definitive limit. However, keep in mind that nominal damages are not intended to compensate someone for a harm they suffered, nor are they intended to punish someone for a harm they caused. Instead, nominal damages vindicate a legal right. It is not unusual for a nominal damages award to be $1, but they have been as much as $1,000. Keep in mind that if you award too much, I may have to reduce it so that it is truly nominal and not what is known as compensatory or punitive damages. (Trial Audio, July 17, 2025, at 02:24:03-02:24:39 PM.)

Rule 51 objection and Rule 59 motion to "correct clear legal error in the judgment itself").)

Because Defendants challenge the awards themselves, rather than the instruction, the Motion is

timely and the arguments not waived.[2] *See* Fed. R. Civ. P. 59(e) (providing that motions to alter

or amend judgment be filed "no later than 28 days after the entry of the judgment"). (Doc. No. 64

at 2-3 (noting judgment entered July 23, 2025); Doc. No. 67 at 1 (noting Motion filed August 12,

2025).)

As to the awards themselves, Defendants insist that "nominal damages are limited to $1."

(Doc. No. 67 at 3.) Thus, the awards here ($2,000 and $2,500), "are plainly inconsistent with" the

law. (*Id.* at 4.) However, Defendants do not cite binding legal authority to support their argument.

At best, Defendants cite *Mollinger-Wilson v. Quiznos Franchise Co.*, 122 F. App'x 917, 918, 923

(10th Cir. 2004), where the Tenth Circuit reduced an award of nominal damages to $1. (*See id.* at

3-6; Doc. No. 69 at 1-4.) But *Mollinger-Wilson* was a diversity action applying Colorado state law.

*Id.* (stating, "Colorado is specific that nominal damages are $1 — not more, not less"). That state

law restriction does not apply here. Indeed, federal courts have awarded more than $1 for

constitutional and other claims. *See, e.g., Adair v. Advanced Metal Fabrication*, 2011 WL

13323633, at *3 (N.D. Ga. May 3, 2011) (awarding $800 in nominal damages for patent

infringement); *Crue v. Aiken*, 370 F.3d 668, 681 (7th Cir. 2004) (affirming $1000 nominal damage

award for First Amendment violation); *Oppenheimer v. City of Madeira*, 2022 WL 190041, at *3

(S.D. Ohio Jan. 21, 2022) (adopting recommendation for $1000 nominal damages award for First

---

[2] However, in the event Defendants did indeed intend to challenge the Court's instruction, their
failure to object did, as Plaintiffs contend, waive that particular challenge. *Hardeman v. City of
Albuquerque*, 377 F.3d 1106, 1118 (10th Cir. 2004) (finding defendants "waived their argument"
that wording of jury instruction led to improper damages award "by failing to object at trial");
*Stella v. Davis County*, 2024 WL 4764694, at * 13 (10th Cir. Nov. 13, 2024) ("Rule 59(e)
motions may not assert arguments 'that could have been raised prior to the entry of
judgment ....'" (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008))).

Amendment violation); *Teufel v. Princeton City Sch. Dist. Bd. of Ed.*, 2013 WL 143808, at \*14 (S.D. Ohio Jan. 11, 2013) (awarding $1000 in nominal damages for due process violation). And although the awards here are greater than in those cases, they are not "so excessive that [they] shock[ ] the judicial conscience and raise[ ] an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 766 (10th Cir. 2009) (quoting *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1216 (10th Cir. 1998)). Indeed, the awards can hardly shock the judicial conscience when they are but a small fraction of the total fee award. Moreover, there are two Plaintiffs here, which essentially reduces each award by half when you consider the amount that each Plaintiff will recover. The Tenth Circuit cautions that a jury's award is inviolate absent a shocking figure, *id.*, and the Court declines to interfere with the jury's awards here.

## II.     Fee Motion

Plaintiffs also seek to recover their attorney's fees, arguing they are entitled to such as prevailing parties. (Doc. No. 70 at 4-5.) Plaintiffs seek $228,270.00 in fees and $9,336.97 in costs and expenses pursuant to 42 U.S.C. § 1988(b) and 28 U.S.C. § 1920. (*Id.* at 15-16.) Defendants oppose, arguing that because Plaintiffs achieved only *de minimis* success, any amount of fees would be unreasonable. (Doc. No. 77 at 3-10.) Alternatively, Defendants argue that the amount Plaintiffs seek is unreasonable and should be reduced. (*Id.* at 10-14.)

42 U.S.C. § 1988(b) provides that, in a lawsuit brought under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A party moving for attorney's fees under § 1988 bears the burden of proving that she is entitled to the award, and that the hours expended, as well as the hourly rate, are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 427 (1983). Once the moving

party meets her burden of establishing the reasonableness of both the hours spent and the hourly rate, the court multiplies those two figures to generate the "lodestar" amount. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

In this case, neither party disputes that Plaintiffs are the prevailing parties in this lawsuit. (*See* Doc. No. 70 at 4-5; Doc. No. 77 3-11.) However, Defendants argue that Plaintiffs' success was limited. (Doc. No. 77 at 7-10.) Defendants assert that Plaintiffs are precluded from collecting any fees pursuant to *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). (Doc. No. 77 at 3-10.) Alternatively, Defendants assert that Plaintiffs' hourly rate is unreasonable. (*Id.* at 11-14.) Finally, Defendants ask that the Court make a blanket reduction to the lodestar because Plaintiffs achieved only minimal success. (*Id.* at 10-11.)

The Court begins by addressing Defendants' arguments under *Farrar.* Next, the Court considers the reasonableness of Plaintiffs' requested hours and rates. After that, the Court considers whether or not to apply a blanket reduction based on Plaintiffs' partial success. And finally, the Court considers Plaintiffs' requested costs and expenses.

### A.      Are Plaintiffs precluded from a fee award under Farrar?

Defendants assert that, under the *Farrar* factors, Plaintiffs' success was so limited that they are not entitled to a fee at all. (Doc. No. 77 at 3-10.) The Court disagrees.

Under *Farrar*, a court may deny fees to a prevailing party when their technical win yields nominal damages so de minimis, that a reasonable fee is "no fee at all." *See Griffith v. State of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1328-29 (10th Cir. 1994) (quoting *Farrar*, 506 U.S. at 115). However, *Farrar* is not an automatic bar on fees simply because the award was limited to nominal damages. *Koopman v. Water Dist. No. 1 of Johnson Cnty., Kan.*, 41 F.3d 1417, 1420-21

(10th Cir. 1994) ("Although it is true [plaintiff] received only a nominal award, the present and future employees of the District benefit by having their rights affirmed.").

The Tenth Circuit applies three factors in determining whether a plaintiff "achieved technical success only," and is precluded from recovering fees: (1) the "difference between the amount recovered and the damages sought"; (2) the "significance of the legal issue on which the plaintiff claims to have prevailed"; and (3) the "accomplishment of some public goal other than occupying the time and energy of counsel, court, and client." *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (quoting *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir. 2001)).

The "focus of the first factor" is "the actual relief awarded," *Barber*, 254 F.3d at 1231, but courts also consider "the relative importance of plaintiffs' successes and failures" on individual claims. *Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995)). Defendants argue that although Plaintiffs initially sought "sweeping damages [and] broad declaratory and injunctive relief," (Doc. No. 77, Ex. B at 46, 50 (proposing jury instruction on compensatory and punitive damages); *see also* Doc. No. 1 at 18-19, ¶ 57), the jury ultimately was not instructed on compensatory and punitive damages. (*See* Doc. No. 60 at 16.) Plaintiffs on the other hand say they "made clear their claim was for nominal damages." (Doc. No. 80 at 6.)

As a threshold matter, the Court agrees that just ahead of trial, Plaintiffs appeared to focus their efforts on nominal damages. (*See* Doc. No. 48 at 5 (noting in final pretrial order that Plaintiffs "seek only nominal damages").) Moreover, and separate and apart from the damages question, the degree of Plaintiffs' success was significant. Specifically, Plaintiffs were successful on two key claims: their First Amendment claim against Defendant Graham, and their First Amendment claim

against the District. (Doc. No. 64 at 1-2.) Defendant Graham was the Board president and the District is, of course, a key defendant. Prevailing against the primary Defendants reflects a high degree of success under the circumstances. Thus, even though Plaintiffs succeeded on only two of their claims, those two claims were at the center of this lawsuit and the loss on the remaining claims "does not diminish the reasonableness of awarding some attorney's fees commensurate with their legal efforts in bringing [their] claim[s]."[3] *Phelps*, 120 F.3d at 1132 (finding that plaintiffs' success on two out of four claims was not *de minimis*); *Brandau v. State of Kansas*, 168 F.3d 1179 (10th Cir. 1999) (finding success on significant issue where "Plaintiff succeeded on her primary claim"); *Jane L.*, 61 F.3d at 1511 (finding success on two of eight challenges to statute was not *de minimis*).[4]

As to the second factor—the significance of the legal issue—Defendants say the Court did not resolve a significant legal question because Plaintiffs' success "did not alter First Amendment doctrine, affect other districts, or clarify the law." (Doc. No. 77 at 16.) But the legal issue here is significant, nonetheless. It concerns delineating the bounds of First Amendment protection in a limited public forum: a local school board meeting. "For many parents, school board meetings are the front lines of the most meaningful part of local government—the education of their children." *Moms for Liberty – Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1328 (11th Cir.

---

[3] Likewise, the fact that Plaintiffs ultimately did not obtain injunctive or declaratory relief does not weigh against awarding them attorney's fees. *See Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997) (finding more than *de minimis* victory where plaintiffs sought declaratory and injunctive relief regarding three statutes but only obtained declaratory relief on one statute). The nominal damages that they obtained vindicated their key constitutional claims against Defendants Graham and the District.

[4] Additionally, while Defendants emphasize their success on the limited public forum issue, (Doc. No. 77 at 7; *see also* Doc. No. 36 at 14), that hardly diminishes Plaintiffs' overall success. Plaintiffs ultimately prevailed *despite* the more stringent test. In other words, that Plaintiff ultimately succeeded under a framework where their expressive rights were "narrowed rather than expanded," (Doc. No. 77 at 7), further heightens the degree of Plaintiffs' success.

2024). And the exchange of ideas between the community and board is a "core purpose of" these meetings. *See id.* at 1337. Thus, even if the case did not tread new ground, the legal questions as applied to these facts, are significant.

On the third factor, Defendants argue the scope of the claims was too limited to have a public impact. (Doc. No. 77 at 8-10.) Specifically, the jury's decision was confined to "an as-applied question: whether John Graham's enforcement of an unwritten sign restriction at one meeting was reasonable or viewpoint-based." (*Id.* at 8.) According to Defendants, the jury "was never asked to decide whether the District maintained an unconstitutional policy," because the District's liability only flowed from John Graham's actions. (*Id.*) The Court disagrees. The jury was tasked with considering the sign restriction policy. On Defendants' own admission—the sign policy was an official practice implemented by the District. (Doc. No. 32 at 14.) And because Defendant Graham acted in accordance with that practice, the jury necessarily considered not just Defendant Graham's actions, but the official practice itself. Additionally, and by extension, when the jury returned a verdict in Plaintiffs' favor, the District was immediately on notice that their practice would need to be revisited. Thus, the jury's verdict has implications that reach beyond this case. And even assuming the District did not consider the jury's verdict to be a warning against the sign practice itself, the verdict certainly placed the District on notice that Defendant Graham's conduct was unconstitutional, and in that way, placed them on notice that their Board's and Board president's conduct needs to improve. The third factor is satisfied when the "plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, *puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct.*" *Barber*, 254 F.3d at 1232-33 (emphasis added).

Because all three *Farrar* factors weigh in Plaintiff's favor, and because the Court's "discretion to deny fees to a prevailing party is quite narrow," *Phelps*, 120 F.3d at 1131 (quoting *Wilson v. Stocker*, 819 F.2d 943, 951-52 (10th Cir. 1987)), and because there are no special circumstances that would render an award of fees unjust, the Court sees no reason to depart from the "general rule" that "the prevailing party 'should ordinarily recover an attorney's fee.'" *Id.* (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989)).

With that, the Court turns to assessing the reasonableness of Plaintiff's hours and fees.

**B.        Have Plaintiffs satisfied their burden of showing their proposed fees are reasonable?**

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist.*, 157 F.3d 1243, 1250 (10th Cir. 1998). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

In support of Mr. Hartman's requested hours, Plaintiffs provided an affidavit from Mr. Hartman; an itemized list of hours billed, including the task worked on; and a summary of Mr. Hartman's significant cases. (Doc. No. 71 & Exs. A-B.) In support of Mr. Finney's requested hours, Plaintiffs submitted a declaration from Mr. Finney, an itemized billing statement, and a summary of Mr. Finney's significant cases. (Doc. No. 72 & Exs. A-B.) Additionally, Plaintiffs provided a declaration from Steven D. Zansberg, a Colorado attorney, attesting to the reasonableness of Plaintiffs' requested hours and rates. (Doc. No. 73 at 2-3, 4-8.)

### 1. Reasonable Hours

Plaintiffs seek fees in the amount of $228,270.00 for a total of 314 hours that "were expended or will be expended" in this litigation. (Doc. No. 70 at 7, 16.) The total includes 292.2 hours for Mr. Hartman, 19.5 hours for Mr. Finney, and 2 hours for Emma C. Friedhoff.[5] (*See id.* at 8-12.) In assessing the reasonableness of the hours, the will consider: (1) whether, given the complexity of the case and strategies pursued, the amount of time spent on each particular task appears reasonable; (2) whether, in light of counsel's experience, the amount of time spent on individual tasks is reasonable; and (3) whether the billing entries contain sufficient detail, including how much time counsel spent on each task. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1247 (D. Colo. 2010) (citing *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983)).

At the outset, Plaintiffs assert that Defendants' opposition fails to raise any direct contention with the total number of hours for which Plaintiffs seek reimbursement. (Doc. No. 80 at 2; *see* Doc. No. 77 at 3-14.) But it is incumbent upon the Court to ensure that counsel "exercised proper billing judgment."[6] *Murphy v. Schaible, Russo & Co., L.L.P.*, 722 F. Supp. 3d 1191, 1197 (D. Colo. 2024). And as noted previously, the party seeking fees bears the burden of proving they are reasonable.

---

[5] The Court assumes that Ms. Friedhoff serves as a paralegal in Mr. Finney's office. She is billed at a rate of $255.00 per hour. (Doc. No. 72, Ex. B at 2.)

[6] Additionally, Defendants do appear to take issue with the administrative and clerical work performed by Mr. Hartman. (Doc. No. 77 at 13.)

A party seeking fees exercises good judgment by making a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. If that effort is "inadequate," the Court may reduce the award accordingly.[7] *Id.* at 433. Both Mr. Hartman and Mr. Finney have attested to exercising proper billing judgment by, among other things, ensuring that their requests contain only hours spent on reasonably necessary tasks. (Doc. No. 71 at 6-7, ¶ 18; Doc. No. 72 at 4-5, ¶ 12.) Moreover, both Mr. Hartman's and Mr. Finney's billing statements are sufficiently detailed in that they identify with specificity each task being performed and the amount of time spent performing it. (*See* Doc. No. 71, Ex. B; Doc. No. 72, Ex. B.)

On careful review of the billing records, the Court finds Plaintiffs' hours to be reasonable, for the most part. However, the Court shares Defendants' concern about administrative and clerical work. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks" should not be billed at an attorney or paralegal's rate.) Clerical work may include e-filing court documents or confirming deadlines with the Court. *Howard v. Midland Credit Mgmt., Inc.*, 2012 WL 4359361, at *4 (D. Colo. Sep. 24, 2012). Here, Mr. Hartman's entries include "preparation of notice of lawsuit forms and waiver forms"; "filing waivers of service of summons"; conferring with the clerk's office on "filing issues"; confirming deadlines with the court; and confirming his clients' availability. (Doc. No. 71, Ex. B at 1, 3-4.) The Court finds these billing entries to be for clerical or administrative work and, accordingly, applies a 1.2-hour deduction. Additionally, the Court notes some duplicative entries. Namely, a follow-up phone call with opposing counsel to confirm the details of an email sent prior, and two separate entries for

---

[7] Further, "there is 'no precise rule or formula' for calculating a reasonable fee award." *See Valdez v. McDonald*, 66 F.4th 796, 841-42 (10th Cir. 2023) (finding multiple approaches sufficient so long as court provides "concise and clear explanation" of method employed (quoting *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1207 (10th Cir. 2015))).

"commenc[ing] drafting/researching proposed jury instructions." (*Id.* at 3, 5.) The Court will apply a 2.1-hour reduction for these entries, yielding a total of 288.9 hours for Mr. Hartman. *See Case*, 157 F.3d at 1258 (excluding as duplicative charges for faxes "generally followed up with a mailing").

The Court has also identified some entries in Ms. Friedhoff's billing that warrant greater scrutiny. Namely, several entries appear to be for clerical work. For example, Ms. Friedhoff billed .2 hours for filing a notice of appearance and emailing the same to opposing counsel; making "deposition binders"; searching for, and booking, flights for Mr. Finney; and printing exhibits and depositions. (Doc. No. 72, Ex. B at 1-2.) Accordingly, the Court will make a 1.3-hour reduction to Ms. Friedhoff's billed time. *See Jenkins by Agyei*, 491 U.S. at 288 n.10 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate").

Outside of these reductions, the Court finds Plaintiffs have met their burden to show that the number of hours billed are reasonable. After application of the Court's reduction, the Plaintiffs' total billed hours are 308.4 attorney hours and .7 paralegal hours.

## 2. Reasonable Rate

"The Court determines a reasonable hourly rate based on the parties' submitted evidence of market data showing rates charged by attorneys of comparable skill and experience in the area." *Vilpando v. Johanns*, 619 F. Supp. 2d 1107, (D. Colo. 2008) (citing *Case v. Unified Sch. Dist.*, 157 F.3d 1243, 1256 (10th Cir. 1998)). In other words, "the court must look to 'what the evidence shows the market commands.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255). "Such evidence includes affidavits submitted by the parties and other reliable evidence of local market rates for civil rights litigation at the time fees are awarded." *Case*, 157 F.3d at 1256.

"The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos*, 713 F.2d at 555, *overruled in part on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). If the Court lacks adequate evidence of prevailing market rates for attorney fees, then it may, "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Case*, 157 F.3d at 1257.

Here, Plaintiffs seek an hourly rate of $730 for both Mr. Hartman and Mr. Finney. (Doc. No. 71 at 7, ¶ 19; Doc. No. 72 at 4, ¶ 11.) They seek a rate of $255 for Ms. Friedhoff. (Doc. No. 72, Ex. B at 2.) Both Mr. Hartman and Mr. Finney have been practicing attorneys for more than 30 years. (Doc. No. 71 at 7, ¶ 19; Doc. No. 72 at 2, ¶ 7.) Mr. Hartman has extensive experience with First Amendment litigation and serves as an authority on First Amendment issues. (Doc. No. 71 at 4-6, ¶ 13, 15-16.) First Amendment litigation is particularly nuanced and can, at least in some instances, require deep expertise. Moreover, Mr. Hartman's current practice focuses predominately on public interest litigation against public entities and officials "for alleged violations of such public officials' legal obligations under law." (Doc. No. 71 at 3-4, ¶ 12.) In other words, it appears Mr. Hartmann was particularly well-suited to assist Plaintiffs with this case. In his declaration, Mr. Hartman attests to his belief that $730 is a reasonable rate for an attorney of his knowledge and experience "in major metropolitan areas throughout the country," including the Denver-Colorado Springs area. (Doc. No. 71 at 7, ¶ 19.)

Mr. Finney, on the other hand, does not purport to be a First Amendment specialist. Still, he leads a firm of 13 attorneys and counts constitutional law among his "significant practice areas." (Doc. No. 72 at 2-3, ¶ 7.) Both Mr. Hartman and Mr. Finney have practiced extensively before federal district courts and courts of appeal, (*see* Doc. No. 71, Ex. A ; Doc. No. 72, Ex. A), including serving as co-counsel in multiple cases before the U.S. Supreme Court, (*see* Doc. No. 71 at 4, ¶

13; Doc. No. 72 at 4, ¶ 9.) Both Mr. Hartman and Mr. Finney currently bill civil rights work at an hourly rate of $730 in the Ohio area. (Doc. No. 71 at 7, ¶ 19; Doc. No. 72 at 4, ¶ 11.)

In support of their proffered rate, Plaintiffs have offered the declaration of Mr. Zansberg, an attorney with approximately 30 years of experience practicing in Colorado. (Doc. No. 73 at 3, ¶ 14.) Mr. Zansberg has been recognized by several national organizations for his expertise in First Amendment litigation. (*Id.* at 2-3, ¶ 10.) In his declaration, Mr. Zansberg says that an hourly rate of $730 is reasonable. (*Id.* at 5, ¶ 17.) Mr. Zansberg says his opinion is based on the supporting materials submitted by Plaintiffs, "various surveys and reports compiling information on billing rates charged by firms" in Denver and Colorado Springs, and several recent opinions from this district. (*Id.* at 4-5, ¶¶ 15, 19.)

In response, Defendants assert that $730 is an exorbitant rate for the market and practice area, even for attorneys as experienced as Plaintiffs'. (Doc. No. 77 at 11-14.) Defendants say Plaintiffs have offered no "empirical evidence of prevailing market rates for § 1983 civil-rights work in the Denver or Colorado Springs legal communities." (*Id.* at 11.) Defendants also say that Mr. Zansberg's declaration offers "conclusory assertions." (*Id.*; *see also* Doc. No. 73 at 5, ¶ 18.) And that those conclusory assertions are unsupported by, for example, bar association surveys, rate data, and the like.[8] (Doc. No. 77 at 11.) In Defendants' view, "a reasonable hourly rate would not exceed $500 to $600 per hour for experienced civil-rights counsel." (*Id.* at 13.)

Generally, a district court "may not use its own knowledge to establish the appropriate [hourly] rate unless the evidence of prevailing market rates before the court is inadequate." *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000). After

---

[8] Defendants also ask the Court to consider firm size and overhead: "large-firm rates reflect institutional overhead and infrastructure that solo practitioners lack and cannot justify." (Doc. No. 77 at 12-13.)

reviewing the evidence submitted by Plaintiffs, the Court is unconvinced that Plaintiffs' proffered rate is reasonable. Plaintiffs' primary support for their proffered rate is Mr. Zansberg's declaration. However, aside from Mr. Zansberg's assertion that Plaintiffs' rate is reasonable, his declaration does not contain any evidence of why that is so. Mr. Zansberg also does not specifically identify any "survey[]" or "report[] compiling information on billing rates" from local firms that he consulted. (Doc. No. 73 at 4, ¶ 15.) Nor does he identify what the prevailing market rate would be for civil rights attorneys of like experience. (*See id.*) Further, the cases Mr. Zansberg identifies as informing his opinion, are not civil rights cases. For example, Mr. Zansberg cites *Murphy v. Schaible, Russo & Co., L.L.P.*, 722 F. Supp. 3d 1191 (D. Colo. 2024) for the proposition that Colorado attorneys have been awarded "rates up to $750 per hour." (Doc. No. 73 at 5, ¶ 19.) But that was a breach-of-trust action, which obviously differs from civil rights litigation. *Murphy*, 722 F. Supp. 3d at 1194. In fact, none of the cases cited by Mr. Zansberg involve civil rights litigation.[9]

Plaintiffs have not met their burden of establishing that $730 is a reasonable hourly rate for civil rights work in Denver or Colorado Springs. Considering recent fee awards in civil rights cases in this district, and Mr. Hartmann's specific First Amendment and public entity litigation experience, the Court finds that $625 is a reasonable hourly rate for him and $550 is a reasonable hourly rate for Mr. Finney. *Cf. Kolbe v. Endocrine Servs., P.C.*, 2024 WL 643039, at *4 (D. Colo. Feb. 15, 2024) (finding $505 reasonable for attorney with 25 years experience in civil rights litigation); *Trevizo-Gonzalez v. Brunnemer*, 2025 WL 6475967, at *4 (D. Colo. Dec. 11, 2024) (finding $550 reasonable for founding partner with "over 20" years of experience in civil rights

---

[9] *Ortho Agency LLC v. Exactech U.S., Inc.*, 2021 Colo. Dist. LEXIS 1861 (Colo. Dist. Ct. Nov. 30, 2021) (breach of contract action); *BIAX Corp v. NVIDIA Corp.*, 2013 WL 4051908 (D. Colo. Aug. 12, 2013) (patent infringement lawsuit); *Miller v. Bahakel Commc'ns*, 2022 WL 1469546 (D. Colo. May 9, 2022) (copyright action); *Snyder v. Acord Corp.*, 2019 WL 319407 (insurance class action).

litigation); *Valdez v. Motyka*, 2022 WL 1092182, at *3 (D. Colo. Apr. 12, 2022) (finding $595 reasonable for shareholders and special counsel); *Epps v. City & Cnty. of Denver*, 2022 U.S. Dist. LEXIS 246055, at *13-14 (D. Colo. Dec. 30, 2022) (finding $595 reasonable for attorney with 17 years experience in civil rights litigation).[10]

### 3. Adjustment for Limited Success

Defendants argue that if Plaintiffs are entitled to a fee award, it should be curtailed to reflect the limited nature of Plaintiffs' success in this lawsuit. (Doc. No. 77 at 10-11.) Plaintiffs respond that their lack of success on an interrelated claim does not warrant a reduction. (Doc. No. 80 at 7-8 n.5.) The Court agrees with Plaintiffs.

When a plaintiff obtains "excellent results, his attorney should recover a fully compensatory fee." *Jane L.*, 61 F.3d at 1511 (quoting *Hensley*, 461 U.S. at 435-36). It is true that when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* (quoting *Hensley*, 461 U.S. at 435-36). But in adjusting for limited success, courts should not "mechanically weigh[] each successful and unsuccessful claim equally;" rather, they should "make qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success." *Jane L.*, 61 F.3d at 1511. "'There is no precise rule or formula' for making such determinations." *Id.* (quoting *Hensley*, 461 U.S. at 436). "[W]hen a district court concludes that some billed hours should be eliminated but cannot 'identify specific hours,' it 'may simply reduce the award.'" *Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2023) (quoting *Hensley*, 461 U.S. at 436-37).

---

[10] Defendants do not address Ms. Friedhoff's rate for paralegal work. (*See* Doc. No. 77 at 3-14.) Regardless, the Court finds it reasonable.

Defendants ask the Court to adjust Plaintiffs' award to account for their failed Equal Protection theory, failure to obtain injunctive or declaratory relief, and failure to prove liability against Defendants David Glenn and Robert Konz.

"If claims are related, failure on some claims should not preclude full recovery if plaintiff achieves success on a significant, interrelated claim." *Jane L.*, 61 F.3d at 1512. Two claims are interrelated if they are based on "a common core of facts" or "related legal theories." *Hensley*, 461 U.S. at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* Although Plaintiffs did not clearly delineate their Equal Protection claim, the Court finds that it was necessarily based on the same set of operative facts as, and thus was related to, Plaintiffs' First Amendment claim. And in any event, the work associated with any such claims would have been limited, as Plaintiffs alleged only a single instance of constitutional deprivation in their complaint. (*See* Doc. 1 at 16-18, ¶¶ 49-56 (describing events from February 20223 meeting as basis of claim)). Thus, at best, Plaintiffs' reference to the Fourteenth Amendment was an alternative legal ground and its failure does not warrant a reduced fee.

As to Plaintiffs' claims for declaratory and injunctive relief, despite raising both in their complaint, they never filed a motion seeking injunctive relief nor expended significant effort pursuing such relief. As to the claims against Defendants Glenn and Konz, it is clear Plaintiffs failed on those claims. But it is also clear from Plaintiffs' complaint that the District and Graham were the primary objects of this action. Further, there is no evidence that Plaintiffs pursued any of these claims in bad faith. Because Plaintiff's unsuccessful claims were related to their successful claims and were brought in good faith, the Court declines to make a reduction to the lodestar.

C.      **Have Plaintiffs satisfied their burden of showing their proposed costs are reasonable?**

As Plaintiffs observe, Defendants' response does not address Plaintiffs request for $9,336.97 in costs and expenses. (*See* Doc. No. 77 at 3-14.) Moreover, the Court finds that less than $10,000 in costs and expenses for a First Amendment case brought in 2023 and tried in 2025, is reasonable. The Court awards Plaintiffs the full amount of their litigation costs. *See Murphy*, 722 F. Supp. 3d at 1199 (awarding plaintiffs all requested costs where defendants failed to object in response to fee motion).

## CONCLUSION

For the foregoing reasons it is **ORDERED** that Defendants' Motion to Amend (Doc. No. 67) is **DENIED** and Plaintiffs' Fee Motion (Doc. No. 70) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's counsel is hereby awarded attorney's fees under 42 U.S.C. § 1988(b) in the amount of $191,466.00 and costs in the amount of $9,336.97.

Dated this 31st day of March, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge